UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
JULIA V., obo, SJAV,

                    Plaintiff,         <u>DECISION AND ORDER</u>
                                       1:20-cv-09921-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In September of 2016, Plaintiff Julia V.[1] applied for Child

Supplemental Security Income benefits under the Social Security Act on

behalf of her daughter, SJAV ("Claimant"). The Commissioner of Social

Security denied the application.  Plaintiff, represented by Osborn Law, P.C.,

Daniel Adam Osborn, Esq., of counsel, commenced this action seeking

judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§

405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a

United States Magistrate Judge. (Docket No. 14).

This case was referred to the undersigned on October 24, 2022.

Presently pending are the parties' Motions for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

under Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 30, 34). For the following reasons, Plaintiff's motion is due to be granted, the Commissioner's motion is due to be denied, and this case is remanded for calculation of benefits.

## I.  BACKGROUND

### A.   Administrative Proceedings

Plaintiff applied for benefits on behalf of Claimant on September 6, 2016, alleging disability beginning January 1, 2013. (T at 10).[2]  Plaintiff's application was denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on March 7, 2019, before ALJ David J. Begley. (T at 42). Plaintiff appeared with Claimant *pro se*. (T at 42).  Claimant testified (T at 49-56), as did Plaintiff. (T at 56-68).

### B.   ALJ's Decision

On October 21, 2019, the ALJ issued a decision denying the application for benefits. (T at 7-29).  The ALJ noted that Claimant was a "school-age" child on September 6, 2016, when the application was filed, and was an "adolescent" at the time of the decision. (T at 13).  The ALJ

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 23.

determined that Claimant had not engaged in substantial gainful activity since the application date. (T at 18).

The ALJ found that Claimant's disruptive mood dysregulation disorder; major depressive disorder; post-traumatic stress disorder; bipolar disorder; and obesity were severe impairments as defined under the Social Security Act. (T at 13).  However, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 13).  The ALJ also concluded that Claimant did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (T at 15).

As such, the ALJ found that Claimant had not been under a disability, as defined under the Social Security Act, since the application date and was therefore not entitled to benefits. (T at 25).  On September 23, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on November 25, 2020. (Docket No. 1).  On March 10, 2022, Plaintiff filed a motion for judgment on the pleadings, supported by a

memorandum of law. (Docket No. 30, 31).  The Commissioner interposed a cross-motion for judgment on the pleadings, supported by a memorandum of law, on June 8, 2022. (Docket No. 34, 35).  On June 23, 2022, Plaintiff submitted a reply memorandum of law in further support of her motion. (Docket No. 36).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

### B.    Standard for Disability Claims for Children

To qualify for SSI benefits, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

The Social Security Regulations provide a three-step sequential analysis to determine whether a child is disabled and eligible for benefits.

20 C.F.R. § 416.924(a)-(d); *see Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004).

First, the ALJ considers whether the child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). Second, the ALJ determines whether the child has a "medically determinable impairment(s) that is severe," which is defined as an impairment that causes "more than minimal functional limitations." *Id*. § 416.924(c). Third, if the child has a severe impairment(s), the ALJ must then decide whether the impairment meets or "medically" or "functionally" equals a disability listed in the regulatory "Listing of Impairments." Id. § 416.924(c), (d); *see also id*. at Part 404, Subpart P, App. 1.

To demonstrate functional equivalence, the child must exhibit a "marked" limitation in two of six functional domains described in the regulations, or an "extreme" limitation in one of the domains. 20 C.F.R. § 416.926a(a) (2017); *see Pollard*, 377 F.3d at 190.

The first five domains consider the child's ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for himself. 20C.F.R. § 416.926a(b)(1)(i)-(v) (2017). The sixth domain considers the child's health and physical well-being. Id. § 416.926a(b)(1)(vi).

A child has a "marked" limitation when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R.§ 416.926a(e)(2)(i) (2017). "'Marked' limitation . . . means a limitation that is 'more than moderate' but 'less than extreme.'" Id. An "'extreme'" limitation is present when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." Id. § 416.926a(e)(3)(i).

## III.  DISCUSSION

Plaintiff offers several arguments in support of her request for reversal of the ALJ's decision.  In sum, Plaintiff contends that the ALJ should have found marked limitation in at least two (2) of the domains of functioning.

The ALJ found marked limitation in Claimant's ability to care for herself. (T at 24-25).  Plaintiff asserts that the ALJ should also have found marked limitation with respect to three other domains: acquiring and using information, attending to and completing tasks, and interacting and relating with others.  This Court will consider each domain in turn.

A.    *Acquiring and Using Information*

In this domain, [the ALJ] considers how well the child acquires or learns information and how well they use the information they have learned. 20 C.F.R. § 416.926a (g)(1).

A school-age child "should be able to learn to read, write, and do math, and discuss history and science."  The child demonstrates what they have learned in academic situations by "reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions." The child uses the skills in daily living and the community by, for example, "reading street signs, telling time, and making change." A school-age child should also be able "to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others." 20 C.F.R. § 416.926a (g)(2)(iv).

Adolescents should continue to demonstrate their learning in academic assignments such as "composition, classroom discussion, and laboratory experiments" and in independent daily living, e.g., by "going to the store, using the library, and using public transportation."  An adolescent should also "apply these skills in practical ways that will help [them] enter

the workplace after [they] finish school (e.g., carrying out instructions, preparing a job application, or being interviewed by a potential employer)." 20 C.F.R. § 416.926a (g)(2)(v).

The ALJ concluded that Claimant had a less than marked limitation in this domain. (T at 20).  There was no error in the ALJ's evaluation of Claimant's limitation in this domain.

Corinne Stanley, Claimant's special education teacher, reported that Claimant had no problem understanding and participating in class discussions and only slight problems with comprehending oral instructions, comprehending and doing math problems, providing organized explanations and adequate descriptions, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussion. (T at 147).  Ms. Stanley assessed "obvious" problems in Claimant's ability to understand school and content vocabulary, read and comprehend written material, and express ideas in written form, but did not report any "serious" problems in this domain. (T at 147).

Dr. Gregory Coleman performed a consultative mental status evaluation in February of 2017.  Dr. Coleman described Claimant as "doing good academically" with special education support. (T at 343).  He found Claimant's intellectual functioning to be "in the average range," with a fund

of information appropriate to her age. (T at 345).  In July of 2017, Dr.

Shelley Ross, a non-examining State Agency review physician, also

assessed less than marked limitation in this domain. (T at 72).

A "marked" limitation exists when the claimant's "impairment(s)

interferes seriously with [their] ability to independently initiate, sustain, or

complete activities." 20 C.F.R. § 416.926a(e)(2)(i).  Based upon this

evidence the Court concludes that the evidence was sufficient to sustain

the ALJ's conclusion that Claimant had less than marked limitation in the

domain of acquiring and using information.

### B.     Attending and Completing Tasks

In this domain, we consider how well the child is "able to focus and

maintain … attention, and how well [they] begin, carry through, and finish

… activities, including the pace at which [they] perform activities and the

ease with which [they] change them." 20 C.F.R. § 416.926a(h).

School-age children should be able to "focus … attention in a variety

of situations in order to follow directions, remember and organize … school

materials, and complete classroom and homework assignments."  They

"should be able to concentrate on details and not make careless mistakes

in [their] work (beyond what would be expected in other children … who do

not have impairments)."  The school-age child "should be able to change …

activities or routines without distracting [themselves] or others, … stay on task and in place when appropriate, … [and] sustain … attention well enough to participate in group sports, read by [themself], and complete family chores." The child "should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation."  20 C.F.R. § 416.926a(h)(2)(iv).

Adolescents "should be able to pay attention to increasingly longer presentations and discussions, maintain … concentration while reading textbooks, and independently plan and complete long-range academic projects." They are also expected to "be able to organize … materials and to plan [their] time in order to complete school tasks and assignments. "In anticipation of entering the workplace, [they] should be able to maintain … attention on a task for extended periods of time, and not be unduly distracted by … peers or unduly distracting to them in a school or work setting." 20 C.F.R. § 416.926a(h)(2)(v).

The ALJ found that Claimant had less than marked limitation in this domain. (T at 21). The ALJ's evaluation of this domain was not error.

 Ms. Stanley reported that Claimant had a "very serious" problem working without distracting herself or others and a serious problem

changing from one activity to another without being disruptive. (T at 148). Ms. Stanley stated, however, that Claimant had only a slight problem paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, organizing her own things or school materials, completing work accurately without making careless mistakes, and working at a reasonable pace/finishing on time. (T at 148). She reported an obvious problem in Claimant's ability to wait to take turns. (T at 148).

Natalie Medina, another of Claimant's teachers, described Claimant as focused and on task "[m]ost days." (T at 198). Although Claimant's attendance is "spotty," she "can work independently." (T at 198). Dr. Coleman described Claimant as appropriately oriented, with intact attention and concentration, with only mild impairment in memory due to focus and attention. (T at 345). Dr. Ross assessed less than marked limitation in this domain. (T at 73).

Based upon this evidence the Court concludes that the evidence was sufficient to sustain the ALJ's conclusion that Claimant had less than marked limitation in the domain of attending to and completing tasks.

C.    *Interacting and Relating to Others*

In this domain, we consider how well the child can "initiate and sustain emotional connections with others, develop and use the language of [her[ community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i).

The ALJ found less than marked limitation in this domain of functioning. (T at 22).  The ALJ's analysis in this domain was not adequately explained or supported by substantial evidence and therefore cannot be sustained.

A school-age child is expected to "develop more lasting friendships with children who are [their] age … begin to understand how to work in groups to create projects and solve problems … have an increasing ability to understand another's point of view and to tolerate differences … be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand." 20 C.F.R. § 416.926a(i)(2)(iv).

Adolescents should "be able to initiate and develop friendships with children who are [their] age and … relate appropriately to other children and adults, both individually and in groups … be able to solve conflicts

13

[with] peers or family members or adults outside [their] family … recognize that there are different social rules … be able to intelligibly express …feelings, ask for assistance in getting … needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers)." 20 C.F.R. § 416.926a(i)(2)(v).

Ms. Stanley reported serious problems with Claimant seeking attention appropriately, expressing anger appropriately, respecting/obeying adults in authority, and interpreting the meaning of facial expressions, body language, hints, and sarcasm. (T at 149).  Ms. Stanley also stated that Claimant had "obvious" problems with asking permission appropriately, following rules, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (T at 149).

In the narrative portion of her report, Ms. Stanley explained that Claimant needed in-school suspensions and "time-outs" to address her interpersonal problems, despite having two teachers in all her academic classes. (T at 149).

Ms. Medina, the other teacher, described Claimant as having mood swings. (T at 198).  On "bad" days, Claimant will "shut down," have a "negative attitude," refuse to do work, and become aggressive when redirected. (T at 198).  In May of 2018, Dominique Nerestrom, a social worker/psychotherapist, provided a note explaining that she had been treating Claimant and recommending that Claimant receive social-emotional support in school, including support from a paraprofessional to help improve her behavior. (T at 634-35).

Therapy notes from 2017 described Claimant has having serious interpersonal problems, including "significant problems at school due to anger issues, which have led to confrontations … with fellow students and teachers." (T at 378, 380, 382, 385).

Claimant's school attendance report for the 2018-2019 school year shows numerous unexcused absences and significant periods of out-of-school suspension. (T at 213-218).

According to her Individualized Education Program ("IEP"), completed in December of 2018, Claimant has "some appropriate relationships with peers and adults," but her behavior "interferes with instruction," she "episodically presents an aggressive posture toward peers and adults," and

she has "mood swings that cover a broad range and can interfere with learning." (T at 204).

Dr. Coleman noted that Claimant loses her temper easily, is easily annoyed, argues with adults, actively defies rules and requests, and experiences mood swings and irritability. (T at 344).  Dr. Coleman also reported that Claimant has "no problems making or keeping friends," has a "good" relationship with her parents, and a "variable" relationship with her brother. (T at 346).  Dr. Ross assessed less than marked limitation in this domain. (T at 73).

In July of 2019, Dr. Patrick Tigenoah examined Claimant and diagnosed disruptive mood dysregulation disorder and post-traumatic stress disorder, acute. (T at 606).

As noted above, the ALJ found that Claimant had less than marked limitation in interacting with and relating with others.  Notably, however, the ALJ's explanation for this finding is conclusory and does not adequately account for the evidence outlined above.

The ALJ cited testimony from Claimant that "she got along 'okay' with teachers and classmates, but also referenced evidence that Claimant was uncooperative, had difficulty interpreting social cues, and was physically

aggressive. (T at 22).  The ALJ did not explain how he reconciled these seemingly contradictory conclusions.

Moreover, the ALJ did not explain how he accounted for Claimant's school attendance record (which was indicative of significant conduct problems, resulting in school suspensions) or the treatment and therapy notes documenting sustained interpersonal problems.  The ALJ cited Dr. Coleman's report to the effect that Claimant could engage in age-appropriate activities of daily living (T at 22) but did not address the portion of Dr. Coleman's report in which he described Claimant as losing her temper easily, easily annoyed, arguing with adults, actively defying rules and requests, and experiencing mood swings and irritability. (T at 344).

Elsewhere in the decision, the ALJ stated that he gave "significant weight" to the assessments of Ms. Stanley and Ms. Medina, Claimant's teachers. (T at 18).  The ALJ, however, provided no explanation for his finding of less than marked limitation in this domain in light of Ms. Stanley's report of serious problems with Claimant seeking attention appropriately, expressing anger appropriately, respecting/obeying adults in authority, and interpreting the meaning of facial expressions, body language, hints, and sarcasm. (T at 149).  Further, Ms. Medina described "bad days", when

Claimant will "shut down," have a "negative attitude," refuse to do work, and become aggressive when redirected. (T at 198).

If the ALJ gave all the teachers' reports significant weight, he was obliged to explain why he concluded those reports were consistent with a finding of less than marked limitation in this domain.  If the ALJ found that the teachers' reports were generally entitled to significant weight, but decided to discount their findings related to this domain, he was obliged to explain how and why he reached that conclusion.  The ALJ failed to provide these explanations.

The ALJ had a duty to build a logical bridge between the evidence and his conclusion, reconciling conflicting evidence and explaining the rationale underlying his decision.  The ALJ failed to satisfy that duty here. *See McClain v. Barnhart,* 299 F.Supp.2d 309, 324–25 (S.D.N.Y.2004) (reversing denial of benefits because ALJ failed to address "the significant quantity of evidence in the record indicating continued impairment in [ ] intellectual and academic functioning", or to "acknowledge [ ] conflicting evidence in the record" and "fail[ed] to explain the basis for finding less than marked limitation …"); *Ramirez v. Astrue*, No. 08 CIV. 7609 (SAS), 2009 WL 2356259, at *8 (S.D.N.Y. July 29, 2009)("With regard to his conclusion that Robel exhibited no limitation in his ability to interact and

relate to others, the ALJ provided little rationale and cited contradictory

evidence."); *Hart ex rel. Hart v. Massanari*, 192 F.Supp.2d 31, 36-37

(W.D.N.Y.2001). For these reasons, the ALJ's conclusion that Plaintiff had

a marked limitation in only one domain of functioning was error.

> D.    Remand

A court reviewing the denial of benefits may, in its discretion, remand

a claim for further proceedings, or solely for the calculation of benefits. 42

U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the

pleadings and the administrative record, "a judgment affirming, modifying,

or reversing the decision of the Commissioner ... with or without remanding

the cause for a rehearing").

A court may remand solely for calculation of benefits when it finds

there is "no apparent basis to conclude that a more complete record might

support the Commissioner's decision." *Butts v. Barnhart*, 388 F.3d 377,

385–86 (2d Cir.2004) (quoting *Rosa v. Callahan*, 168 F.3d 72, 83 (2d

Cir.1999)); *see also Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987)

(remand for calculation of benefits appropriate where record "compel[s] but

one conclusion under the ... substantial evidence standard."); *Parker v.*

*Harris*, 626 F.2d 225, 235 (2d Cir.1980) (remand solely for calculation of

benefits appropriate where "the record provides persuasive proof of

disability and a remand for further evidentiary proceedings would serve no purpose").

In this particular case, a remand for further proceedings would serve no productive purpose, would not produce findings contrary to this Court's conclusions, and would only cause further delay. The record contains persuasive proof of Claimant's marked limitation of functioning in at least two of the domains identified under 20 C.F.R. § 416.926a.

The ALJ already found marked limitation in Claimant's ability to care for herself. (T at 24).  In addition, the record compels but one conclusion under the substantial evidence standard that Claimant likewise has marked limitation in her ability to interact and relate to others.  As discussed above, both of Claimant's teachers reported serious interpersonal problems, which problems were well-documented in treatment and therapy notes, and which were serious enough to warrant multiple, significant school suspensions.

Plaintiff's application for benefits on behalf of Claimant had been pending for more than four (4) years when this case was filed. Delay "is harmful for any litigant, but particularly in connection with benefits for children, which are not to replace lost income, but to enable low-income families to afford special education, medical treatment, physical rehabilitation, early intervention services, and personal needs assistance

for the child." *Nieves ex rel. Nieves v. Barnhart*, No. 02 Civ.9207, 2004 WL 2569488, at *10 (S.D.N.Y. November 12, 2004) (citing *Maldonado v. Apfel*, 55 F.Supp.2d 296, 297–98 (S.D.N.Y.1999)). In fact, "[t]he purpose of providing SSI benefits to children is to assist them while they are children." *Molina v. Barnhart*, No. 00 CIV. 9522, 2002 WL 377529, at *10 (S.D.N.Y. March 11, 2002).

Accordingly, further delay is not warranted and, therefore, a remand is ordered solely for the calculation of benefits.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 30) is GRANTED; the Commissioner's Motion for Judgment on the Pleadings (Docket No. 34) is DENIED; and this case is REMANDED for calculation of benefits. The Clerk is directed to enter a final judgment consistent with this decision and order and then close the file.


Dated: November 14, 2022          *s / Gary R. Jones*
                                  GARY R. JONES
                                  United States Magistrate Judge